IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFTON WILLIAMS, | : | 4:08-cv-1915 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| JEFFREY BEARD, *et al.,* | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**May 18, 2016**

## I.   INTRODUCTION

This matter is before the Court following a bench trial on Plaintiff Clifton

Williams' ("Plaintiff" or "Williams") claim pursuant to the Religious Land Use

and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* The

parties have filed post-trial proposed findings of fact and conclusions of law; thus

the matter is ripe for our determination.  For the reasons that follow, we find in

favor of the Plaintiff.

## II.   FACTS

Plaintiff Williams is an inmate incarcerated at the State Correctional

Institution at Mahanoy ("SCI-Mahanoy").  Williams is, and has been for at least 20

years, a follower of the Muslim faith.  Williams' religious faith requires that he

engage in prayer five times each day (dawn, noon, afternoon, sunset and evening),

attend Jumu'ah prayer (congregational worship) every Friday afternoon, fast for

Ramadan, and give to charity within his means.

All capable inmates at SCI-Mahanoy are required to initially work in food

services for a minimum of three months, and receive at least a satisfactory rating

on their progress review before being considered for other job assignments.  The

institution has a policy of prohibiting inmates from indulging in any prayers that

involve rituals or displays while working in the kitchen, nor may an inmate

working in the kitchen pray in a prone position.  However, during the Muslim

holiday of Ramadan, Muslim inmates working in the kitchen are provided a space

in the preparation room in the kitchen to pray in a prone position.

On October 23, 2006, while assigned to work in the kitchen at SCI-

Mahanoy, Plaintiff was found praying in an unauthorized area of the kitchen,

specifically between a wall and a hot box in the diet room.  Food Services staff

member Cheryl Stanitis ordered Williams to stop praying, but Plaintiff refused and

continued his prayer to completion.  The next day, Plaintiff was charged with

misconduct for refusing to obey an order and for presence in an unauthorized area.

A misconduct hearing was held.   Plaintiff pled guilty to the charges, explaining

that the noon prayer was due, he had commenced prayer, and once a formal prayer

has commenced, it is generally continued until completion.  As a result of his

misconduct, Williams lost his Food Services Department job.[1]

Thereafter, on October 17, 2008, Plaintiff filed this civil rights action, *pro*

*se*, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized

Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*  (Doc. 1).   Williams

alleged that the institutional policies, practices, and procedures of the Food

Services Department at SCI-Mahanoy unfairly infringe upon his practice of Islam

in violation of the Free Exercise Clause of the First Amendment and the terms of

RLUIPA.  On August 30, 2010 we issued a Memorandum and Order granting the

Defendants' motion for summary judgment on both of Plaintiff's claims.  (Docs.

44 and 45).  Williams appealed our ruling to the United States Court of Appeals for

the Third Circuit.  On February 22, 2012, the Third Circuit issued an opinion

affirming our grant of summary judgment on Plaintiff's Free Exercise claim but

vacating our grant of summary judgment on Plaintiff's RLUIPA claims and

---

[1] In their post-hearing submission, the Defendants raise the affirmative defense of failure to exhaust administrative remedies **for the first time in this 8-year litigation.** (Docs. 182 and 183). To be sure, failure to exhaust was not raised in the Defendants' Answer (Doc. 15) or summary judgment motion papers. (Doc.30). Nor was failure to exhaust raised or mentioned anywhere within Defendants many recent pre-trial submissions. It is well-established that "[f]ailure to raise an affirmative defense by responsive pleading or by appropriate motion generally results in the waiver of that defense." *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991).  Thus, we find that the Defendants waived the affirmative defense of failure to exhaust.  Further, even assuming *arguendo* the Defendants did not waive the defense of failure to exhaust, it is our view that Williams did in fact exhaust his administrative remedies.  To be sure, Williams pursued his administrative remedies relevant to the misconduct report to every level of appeal.  In our view, Williams administrative remedies have been exhausted. Moreover, we shall not consider the Defendants' attempt to raise the defense of qualified immunity at this late stage of the litigation because they have waived the opportunity to do so.

remanding this claim to us for further proceedings. *See Williams v. Klemm*, 450

Fed. App'x 191 (3d Cir. 2011).

On remand, *pro bono* counsel was obtained for Williams and settlement was

explored by the parties, but a settlement could not be achieved.[2]  Accordingly, on

December 15, 2015, we conducted a 1-day bench trial on Plaintiff's RLUIPA

claim. The parties were ordered to file post-trial submissions, which have been

received and reviewed by the Court.  (Docs. 181, 182, 183, 184-1).  For the reasons

that follow, we find in favor of the Plaintiff on the RLUIPA claim.

## III.   DISCUSSION

### A.    Relevant Law and Jurisprudence

Section 3 of the Religious Land Use and Institutionalized Persons Act

provides, in relevant part:

> No government shall impose or implement a land use regulation in a
> manner that imposes a substantial burden on the religious exercise of
> a person including a religious assembly or institution, unless the
> government demonstrates that imposition of the burden on that
> person, assembly or institution . . . (A) is in furtherance of a
> compelling governmental interest; and (B) is the least restrictive
> means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).  RLUIPA protects any exercise of religion,

whether or not compelled or central to, a system of religious belief.  *See* 42 U.S.C.

§ 2000cc-5(7)(A).

---

[2] We take this opportunity to thank Plaintiff's *pro bono* counsel for their exemplary work on his behalf.

Courts employ a burden-shifting framework to determine the viability of a RLUIPA claim. To establish a *prima facie* RLUIPA violation, a plaintiff must show 1) that the relevant exercise of religion is grounded in a sincerely held religious belief; and 2) that the government policy substantially burdens the exercise of religion. *See Cutter v. Wilkinson,* 544 U.S. 709, 725 (2005); *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007). The Third Circuit has held that:

> For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Id*. at 280. In short, if a plaintiff has to choose between not doing religious exercise or discipline if he does engage in religious exercise, then the policy likely substantially burdens religious exercise. To be sure, the inquiry is not whether the plaintiff is able to engage in other forms of religious exercise but rather whether the government has substantially burdened religious exercise. *Holt v. Hobbs, __ U.S. __*, 135 S. Ct. 853, 862 (2015).

If the first two elements of the *prima facie* case are met by the plaintiff, then the burden shifts to the government to show that its refusal to permit a religious exercise was both 1) in furtherance of a compelling government interest; and 2) the

least restrictive means of furthering the government interest. *See Washington*, 497 F.3d at 282. "The least-restrictive means standard is exceptionally demanding," requiring the government to "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." *Holt*, 135 S.Ct. at 864 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ___, ___, 134 S. Ct. 2751 (2014)). With this framework in mind, we turn to an analysis of Williams' RLUIPA claim.

## B.     Analysis of RLUIPA Claim

There is no dispute among the parties that Williams is a devout Muslim who is required by his faith to offer five prayers a day, and that the prayers must be offered in a prone position on a clean area. (Doc. 135, ¶¶ 8-10). Where the parties diverge is on the question of whether SCI-Mahanoy's policy prohibiting prone prayer in the kitchen substantially burdens Williams' exercise of religion. We find that it plainly does.

At trial, Williams testified at length about the precepts of the Islamic faith as well as about the event giving rise to this litigation. It is beyond dispute that Williams was forced to choose between offering the noon prayer or violating SCI-Mahanoy policy pertaining to prone prayer in the kitchen. Thus, we can easily find that SCI-Mahanoy's policy substantially burdened Williams' exercise of religion.

Having established that Williams' exercise of religion was so impaired, we must consider whether the Defendants have met their burden of showing that the impediement was in furtherance of a compelling government interest and the least restrictive means of furthering that interest.  In an attempt to meet that burden, Defendants have proffered that prohibiting prone prayer in the kitchen is in furtherance of "legitimate security, sanitary and penological" interests.  (Doc. 182, p. 23).  It can be inferred from the Defendants' post-trial submission that their position is that the current prohibition is the least restrictive means of furthering their aforestated interests inasmuch as they contend that "[t]he only possible reasonable accommodation this Court should provide Plaintiff in this matter is to have him transferred to an institution which does not require inmates to work in the kitchen."  (Doc. 183, p. 22).  While we agree with the Defendants that there are compelling interests in security and sanitation at SCI-Mahanoy that must be considered, we simply cannot find that a blanket prohibition on prone prayer in the kitchen is the least restrictive means of achieving those interests when we consider the uncontroverted fact that, during the high holy month of Ramadan, SCI-Mahanoy provides kitchen workers a place to pray in a prone position.  This is the very relief that Williams seeks on a year-round basis.  The fact that Defendants afford it on a temporary basis for an entire month gives lie to their argument that

Plaintiff cannot be accommodated. Thus, we find that the current policy at SCI-Mahanoy violates Williams' rights under RLUIPA.

**C.    Remedy**

Relief available under RLUIPA is injunctive and/or declaratory only – RLUIPA does not allow for the recovery of money damages. *See Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012).

For his part, Williams has submitted five alternative proposed forms of relief that would accommodate his prayer.  They are as follows:

1) Permitting prayer at all times in the designated preparation room that had been previously offered to Muslim inmates in the Food Services Area at SCI-Mahanoy to offer evening prayer and sunset prayer during the month of Ramadan;

2) Permitting prayer in the dining room, which is a secured area that inmates currently use during breaks;

3) Permitting a leave and return policy used at other Pennsylvania institutions;

4) Providing schedule flexibility such that inmates' kitchen shifts would not conflict with Muslim prayer times; or

5) Removing the policy requiring inmates to work in food services as a prerequisite for obtaining other work assignments.

In consideration of these options, the Court is not blind to the fact that we must also consider the security concerns of SCI-Mahanoy.  Moreover, we are exceedingly reluctant to micromanage the protocols in all state prisons, and will thus fashion relief that is as narrowly tailored to SCI-Mahanoy as possible. Therefore, given the fact that SCI-Mahanoy already securely provides a space for Muslim inmates to pray in a prone position during the holy month of Ramadan, we shall issue an Order requiring that SCI-Mahanoy provide a clean and appropriate space for inmates working in the kitchen to offer prayer in a prone position during their shift all year round.  Alternatively, we shall Order that if such a space cannot be created in the kitchen for year-round prayer, that Muslim inmates shall be permitted to offer prone prayer in the dining room while on kitchen duty.  While we respect Defendants' concerns about security and sanitation, they do not withstand the scrutiny that RLUIPA compels us to apply.

## IV.   CONCLUSION

Accordingly, based on the foregoing, we shall issue an Order (1) declaring that the Plaintiff's statutory rights under RLUIPA were violated, and thereby require the removal of the official misconduct violation in Williams' prison record arising from his saying prayer in the kitchen area on October 23, 2006; (2) mandating an accommodation and an alternative accommodation, as described above and in the separate Order that follows, for Muslim prayer for Muslim

inmates working in the kitchen; and (3) requiring that Plaintiff either be reinstated to his position in the kitchen or, in the alternative, to another suitable job position within SCI-Mahanoy at the rate he would have been paid had he not been cited for the October 23, 2006 misconduct and subsequent loss of job.  Further, given that Plaintiff has prevailed on his RLUIPA claim, Plaintiff's counsel may appropriately submit a petition for attorneys' fees.

A separate Order shall issue.